Good morning, your honors. May it please the court, my name is Ellen Mossman with Deckard, and my co-counsel Ben Barnett and myself were appointed by this court to represent Appellant Joseph Watson, an inmate challenging retaliation at SCI Somerset in Pennsylvania. I would like to reserve two minutes for rebuttal. We ask this court to reverse the district court's grain of summary judgment. I would like today to focus on three points. First, the district court failed entirely to evaluate whether Mr. Watson was actually guilty of the misconduct, precluding the same decision defense. Second, Jim? Under our case law, why would the court even have to do that? Don't they, isn't the test whether or not there's any evidence to support the finding of the disciplinary hearing? Well, first of all, your honor, Hill was not a prison inmate retaliation case. It was in a different context. And second, even if the district court was only required to evaluate whether some evidence supported the application of the prison policy, the district court didn't do that here because it took the evidence in a light against the non-moving party, Mr. Watson, and by concluding that the radio was broken, when in fact he said that the radio was loose or wiggly. And he admitted it was taped, though, didn't he? He did, but the district court didn't say that the radio was altered because the radio antenna was broken and tape was affixed to it. That's sort of confusing the evidence there. Well, I thought he claimed that the guard broke it after it had already been taped. He did claim that. All right, so the taping occurred before the breaking. If we accept this true as we must, his allegation that the guard actually broke the antenna, don't we nevertheless have to accept that he himself altered it by taping it before the guard broke it? We do have to accept that he taped the antenna, Your Honor, but we don't have to accept that it was altered because he taped it. And the district court never analyzed... I thought he conceded that it was altered. He conceded the fact that the taping constituted an alter, but the issue was whether or not the regulation, I guess it's 815, encompasses that kind of alteration. He never conceded that it was altered. He conceded that it was taped, and the district court failed to analyze whether taping an antenna with a clear piece of tape constitutes altering an antenna. It had been taped about roughly a year before? It had been taped more than a year before when he was being transferred. And there were numerous inspections during the course of that year and nothing mentioned? That's correct, Your Honor, and he also submitted inmate affidavits who had antennas that were concededly broken. But they don't help him because two of those affidavits, they don't name the name of the CO who took the radio, and Banks' affidavit that didn't name the same CO said that he was disciplined for it and the disciplinary action was upheld. Well, Your Honor, we would submit that the two affidavits with the unnamed prison guards, it's up to the jury to determine whether or not that matters to whether these affidavits are credible. It can still be some evidence that the prison guards were retaliating against Mr. Watson for his protected conduct. And your evidence that they were retaliating is what? I'm sorry? And the evidence that they were retaliating, or I guess I'm focusing mostly on Officer Kutz, the evidence of retaliation is what? Well, the evidence is that he didn't say, I'm giving you a misconduct because your radio is altered and it constitutes contraband. He said, I'm giving you a misconduct because you gave my officers a hard time when you were arguing about fixing your radio and requesting a grievance form. And you weren't polite. You weren't polite. And, you know, if the prison had said, I'm giving you a misconduct because of insolence, that would be one thing. But that's not the situation we have here. We have the misconduct being given for an altered radio, and then we have a different reason being given by the officer who approved the misconduct. Are you saying it wasn't an altered radio, or it was an altered radio and they shouldn't have given them the misconduct because it was based on retaliatory motive? I'm saying that it wasn't an altered radio to begin with. It wasn't? No, but I'm also saying that if it was... But if it was, then you lose the case. If it was an altered radio, I would say that the district court has to analyze whether or not it's an altered radio. That's a good question. If it is altered, yes, the misconduct would be justified. It would be valid. Regardless of the ill motive, right? Isn't this part of the problem with the motive of Carter? Yeah, that's the same decision defense. If he's clearly guilty... I mean, we would point to the Carter case. You're right, Your Honor. That if he's clearly guilty of the misconduct, no matter whether there was retaliatory motive involved, this is the prison retaliation context and we recognize that if he was guilty of this misconduct, they would have made the same decision, then the officers win. We just don't have that situation here. Turning to temporal proximity, which the appellees raised in their brief, he had engaged in two protected conducts, one of which was requesting a grievance form and the other was filing and prosecuting a lawsuit. And the appellees concede that the issuance of the misconduct followed hard on the heels of the request for a grievance form, yet still challenge whether or not there's temporal proximity there. We're talking about a period of mere hours, and this evidence is bolstered by Officer Kutz's statement as to why he was being given the misconduct. The insolence? The insolence and requesting a grievance form, Your Honor. And that, to me, to us, is enough evidence to survive summary judgment on the causation of it. I think it's a footnote that she questioned whether or not that, quote, retaliation, close quote, would rise to the level of conduct necessary to chill someone's person in the wards. Whether the... We'll get to the end of that, but I'm curious about your reaction to it. Whether the issuance of a misconduct is sufficient adverse action? Right. What happened is she's saying she's doubtful that's enough to chill someone's constitutional right so that would take away the causation issue. We wouldn't have it. I'm sorry. I'm confused whether you're talking about the protected conduct element or the adverse action element. The adverse action. It's not a sufficient adverse action. Your Honor, first of all, appellees have conceded that issue by not arguing it before this court. They assumed for the sake of the appellate briefing that the adverse action element was fulfilled. Sufficient. But even so, the issuance of a misconduct is pretty clearly an adverse action. It can have effects such as change in cell assignment, restriction on privileges, which are very important to the inmate population, and it can also affect their ability for pre-release programs and parole because if you have a certain number of misconducts in a certain period, you're not even eligible for work release programs, that sort of thing. When I read this instruction, I didn't see it as a recent surprise. I would think that a radio with an antenna would be prohibited to contraband anyhow, and an antenna could make one hell of a weapon. But that's not a problem in the prisons?  It appears so, Your Honor. And there was something in appellee's brief about how they were considering changing over to tablets, and quite frankly, that makes sense, but that's not really an issue here because the radio itself wasn't contraband, and we would submit that with a loose radio antenna, it is also not contraband, simply because of the piece of tape, which doesn't actually change the radio antenna in any way. It just makes it more secure. What does it mean to be altered from its original state? Altered means to make different without changing into something else, I believe. Is that your own? That's a great Webster's Dictionary definition. It's right off the top of your head. That's very good. Well, I think that's what the dictionary definition is. You're writing dictionaries. Don't take me word for word, but I believe that's what it is. And we would submit that when you're putting a clear piece of tape, now I know this is semantics, but if it were a blue piece of tape, we might be in a different state. Why? Because it's not making it into something else. If it's a clear piece of tape, you can see through it, you can see the antenna. It is exactly the same, except something clear is on it. What if my antenna is broken, totally dislodged, and then I put it back together with clear tape? Is that altered? Well, I would say that it is broken, which damaged, destroyed also fulfills the contraband. So it might fit into other categories. But if the antenna doesn't fall off entirely and it's just hanging there by a thread and I prop it back up and tape it with clear tape, that's not altered? Does the distinction turn on something that fine as to whether the antenna actually falls off or whether it's hanging by a thread? The distinction before this court, I would submit, doesn't turn on this. No, I mean for the prison. For the folks that are trying to regulate whether something's altered or not in the prison context, are they supposed to define altered based on those sorts of distinctions? I don't think that they need to define altered based on how loose it is. I would just submit. So why can't they define altered based on, hey, you put a foreign object that doesn't belong on a radio, namely tape, which gives us some concern because that might mean that if I just unwind the tape, I've now got a weapon that I could use. Maybe they can decide that, but the real issue here, Your Honor, is that the district court didn't make any inquiry into whether or not it was altered. It said that it was broken, which is clearly contrary to the summary judgment record, and therefore it was altered. If I were to consult a lawsuit on radios and look up the word broken, what would I find? Broken, for a radio antenna, I would say broken is the radio antenna is separated. It's one of those extending radio antennas that has five pieces, and so you can have part of it left, say three parts of the extension, and then have two of them broken off, and I would say that that's broken. It would seem that the prison would have a legitimate interest in removing that broken off piece of radio antenna, but that's not the situation we have here. So this isn't really about dictating where the prison needs to draw the lines. It's about dictating that the district court must make some inquiry into whether the inmate is actually guilty of the misconduct. It just can't rubber stamp a prison's determination that the inmate was guilty of the offense and use that to excuse a case of retaliation. Why wouldn't Carter say you're wrong? Well, Carter has some pretty good language for us, Your Honor. In Carter, the court recited the evidence of his numerous violations of prison policy, which were totally unrelated to his protected conduct, and said that there was a sizable quantum of evidence showing that he was clearly guilty of these prison infractions, and the same sort of analysis just didn't occur here. The court accepted that because it was broken, it was therefore altered, and because it was altered, it was contraband, and then despite the nonsensical application of the prison policy here. And that's what the magistrate said was nonsensical. Nonsensical. Which would suggest that she thought it was just a piece of tape as opposed to a broken antenna. Well, it's really hard to tell what she thought from the opinion, and we would just submit that the district court has to do some minimal inquiry into what the evidence supports, and it says broken, which is different from how he described it as loose and wiggly. How would Musman define wiggly? Wiggly is you can move it a little bit, but it doesn't come fully off. Okay. Same with loose. Similar definition. You may lose her from the charge. It's really weird, this stuff. And, you know, there are also genuine issues of material fact that preclude the application of the defense here. It's not entirely material to whether or not the same decision in defense applies, but whether Officer Klein broke the radio antenna before, which sort of is in the factual pattern of what happened here. The point is, you know, he allegedly broke this radio, and then the prison confiscated it. He, Officer Klein, allegedly broke the radio. You know, Mr. Watson was giving the officers a hard time about it, and instead of fixing the radio they said, nope, we're going to penalize you for having this broken radio. And that just, this just needs to have some more, this needs to be flushed out more. I see my time is up. You had eight officers, four are left. You have, what is it, Kutz, you have Somosco, DuPont, and who was the fourth one? Snyder, Your Honor. Snyder. And who is your, do you think your best case is against? I'm out of time. May I finish? That's all right. I would say that the best case is probably against Officer Kutz, just because of what Mr. Watson says that he said. But discovery was not fully flushed out as to the other officers. So there's certainly good cases that could be developed if this case went to trial. All right. Thank you. Thank you. Thank you. Mr. Murchley. Murchley, is it? Murchley, Your Honor. Murchley. Good morning. Good morning. May it please the Court. My name is Kamal Alexander Murchley. I represent the appellees in this case. This case has a potential for being considered and resolved as an extremely simple case. Regardless of which statement of facts one accepts as to the condition of the radio, it fits the definition of an altered radio or an altered item under the controlling administrative directive of the Department of Corrections. But doesn't Carter require that if you're going to rely on that, it has to be clear and overt that you have contraband here? Yes, it does. It requires first a conviction of a misconduct. We have that. But in order to have something so clear and overt, the testimony was that this was in whatever state it was when Officer Klein did the inspection on the morning at issue. It had been that way for over a year. Yes. No one had any problem with it whatsoever. So it sounds like it wasn't clear and overt violation of any kind of contraband. Well, I would suggest, Your Honor, that it sounds like no one had considered or decided to enforce the regulation with respect to that radio, assuming, as we must because we're on review of a motion for summary judgment, that Watson's account of what was wrong with the radio is, in fact, the ruling account. So I would suggest that for the purposes of DCADM 815, having a radio with a loose and wiggly antenna and a piece of tape on it is clearly a violation of that. But if it's so clear, why wasn't it called into play during all the prior inspections before? We simply don't know. And it's something along the lines of municipal and state police officers enforcing minor offenses and traffic offenses. Sometimes we can tell from his affidavit that enforcement varies. So that's a tactful way of saying they let it go for a while until he became a real pain in the neck and then they decided to move him up. That's possible. But on the other hand, assuming that that's true, it fits within the philosophy of the law. Anyway, for the same reasons, an officer that pulls over someone going 75 who gives attitude gets written up and the other one who's polite doesn't get written up. Correct. But we also have United States v. Wren. We have Ohio v. Robinette. And we have cases along those lines like Hartman v. Moore, all of which say in felony cases involving arrests or searches that lead to felony arrests that if in fact there's an adequate justification for a stop, even if it's in fact pretextual because they want to develop evidence of a greater offense, that the existence of probable cause for that stop or probable cause for that detention or seizure is an adequate basis to, even if pretextual. So what we are saying is the moment you get a stop. I understand what you're saying about intent. The intent isn't the issue here. But Ms. Mosman conceded, as I think she had to, if the radio were in fact altered, then there's a violation. Yes. But what is your response to her challenge that the district court erred when it said that the radio was broken when in fact the pleading from Mr. Watson is that the officer was the one that broke the radio post hoc? Well, again, it depends on what you mean by broken. I think it's broken under the account that Watson provided of his radio. In other words, if it's loose and wiggly, you put tape on it to secure it in order to make sure. What do we call it, broken instead of loose and wiggly or altered? Are there distinctions between what those words mean and what broken means? Well, I'm following up on a question you asked my learned opponent a little bit earlier, and that is my point is for DC ADM 15 to work, it has to be a clear, bright, overly inclusive type of line that they're enforcing. Because what we're trying to do is to enforce a prophylactic rule for institutional security, which they even concede in its ruling sense without giving away their particular case in this instance. They don't think there's anything wrong with DC ADM 815 on a philosophical sense. We all think that prisons can take away items which because they've been broken or altered or changed in some fashion from their ordinary use present the possibility for breaking prison rules or using them as tools, using them as weapons. So we all understand that. And in order for that thing to work well, it should essentially be permitted to be enforced in a somewhat over-inclusive way. Any time that there's something wrong with it, any time that it's not in perfect shape, potentially it's been damaged, potentially anything that's been done to jury rig it is an alteration. So I'm saying that they're entitled in this instance. Obviously, if we take Klein's account of what happened, as the hearing examiner did, it's not even an issue. But Watson disputes that account, so we have to go with Watson's evidence. And I'm simply saying that if we take Watson's evidence, we're willing to say that that's adequate to satisfy the sum evidence standard, that that's adequate to satisfy Carter v. McGrady. And I think we have to say that. And I think if it's not, then we can't prevail on the sum evidence standard because we're not allowed to use Klein's. Well, Ms. Mossman distinguishes Carter v. McGrady because of the nature and severity and the undisputed severity of the violation that was at issue. That's true. I mean, what you've got here is an allegation that the radio was in effect broken or disassembled by Officer Klein and that nothing for a year before had happened and Watson wasn't happy about it. He told him he was unhappy. He was going to file a grievance, ask for a grievance form, and only then, six hours later, after he was purportedly told by Officer Kutz that, hey, you gave the people this morning a hard time and you weren't polite and therefore I'm going to write you up with misconduct. And that, to me, seems like the type of issue that's a material issue of fact that needs to be resolved by a jury. And all too often, we decide things in summary judgment for the purpose of clearing the deck, but this one needs to be worked out. Maybe he's right, maybe he's wrong. But on this one, even if it was contraband, the Hill case cuts both ways. There was a question asked of Ms. Mossman as to whether Hill may work against her, but also Hill says that discriminatory enforcement of a statute or ordinance is not justified simply because the enforcement is otherwise valid. Let's assume for the moment the enforcement here was otherwise valid, but then you've got this minor thing which was going to be left that way. You have it escalate because Kutz is upset with Watson. He's upset with Watson's demeanor in the morning. And I don't know the answer, but it's really not for me to decide, is it? It's for a jury to decide. Well, my response to that is the same response that Magistrate Judge Linehan had in writing the opinion, and that is we can set aside any of the imponderables that relate to the existence of the prima facie case fell on and simply deal with the fact that if the radio was in this state, assuming Kutz had a retaliatory motive, and recall that Kutz was not the one that actually allegedly broke the radio, nor was Kutz the one that said that connected it in any way with his... No, but Kutz was the one who decided to write him up. Kutz did write the misconduct, yes. You've got a three-part test here. One, was there a constitutionally protected activity? You can see that. As you should. I'm not arguing. You shouldn't. Second step is was there an adverse action? Clearly there was because he got a misconduct. And then was there a causal link between the two? And that's the one that you're suggesting doesn't exist. And because of the clear testimony, unrebutted, of Watson, that he was written up because he gave people a hard time, Kutz said he gave people a hard time, Kutz never really denied it, and that he wasn't polite. Again, that's not for us to decide as a matter of law because there appear to be issues of material fact that are still out there and need to be resolved by a jury. Permit me to suggest this. I agree, let's say for the purposes of your question, that all of the prima facie case exists for the purposes of a retaliation claim. But our response here is in the nature of an affirmative defense, and it's one that's rooted in the philosophy of our law that at times motive or intent doesn't matter if the evidence is sufficient to demonstrate that the individual complaining. What about the language from the Hill that Judge Ember just mentioned to you, that in this kind of situation discriminatory enforcement may not be okay by Hill? Well, then I think you have a much greater problem than the Watson case. You have a problem with Rouser v. Horn because if it's read broadly enough to incorporate, it says discriminatory. Now, if it's read broadly enough to incorporate any evil motive, including a retaliatory motive, then your opinion in Rouser v. Horn, under which we've been operating for 15 years, is wrong. Because it says that in fact, regardless of the evil motive or invidious motive or retaliatory motive, if in fact, and that's what Carter v. McGrady is based on, Rouser v. Horn. If in fact, regardless of the motive, in other words, it's street wisdom. In the neighborhoods where I am familiar from my youth, if the cop didn't like you, make sure you didn't jaywalk. If the cop doesn't like you, don't spit him on the sidewalk while he's watching because you're giving him a stick to beat you with. You're giving him an excuse. And he already doesn't like you. Let's assume that happens here. Why didn't Kootz write him up at 930 in the morning? Why did he wait until 230? We don't know. We simply don't know. And that's part of the problem that we raise in terms of causation. In some sense, it's kind of a paradox. It happened the same way. If he'd write up at 930 in the morning, just common sense would have been, hey, dude, you got an altered or something that we consider to be altered. Officer Klein found it. Maybe we didn't enforce it before, but now we're going to enforce it now. He didn't say that. Nothing. And then later on, things sort of, okay, he wasn't nice to these guys. He probably was a pain in the tush, and we're going to write him up. So that fits under what may be deemed to be retaliation. And if I accept that point, Your Honor, respectfully, my point would be that that retaliation is nullified by the fact that it was an altered radio. You're coming back, and then Hill says, but maybe even if it was, that may not be enough because let somebody sort out whether it was really retaliation or it was, hey, I had two reasons, and I had a pretty good reason both ways. I was a little upset with the guy but decided it was a gray area. I wasn't going to give him a break. Maybe the jury buys it. I don't know who wins. I just know that these types of cases at summary judgment deal with issues that I don't think I should be deciding or judges should be deciding. I understand your position, Your Honor, and respect it. Our position, nevertheless, must be that in cases even when, in fact, the officers have acted out of a retaliatory motive and have responded to a protected activity by visiting an adverse result upon the individual, that in such a circumstance, if, in fact, there was a justification independent of their motivation, that that justification is an adequate basis to nullify the invidious and retaliatory motive. And you're saying that's the law in the realm of criminal law, not just prison regulation. Correct. And if it's the law in criminal law, it would seem to necessarily follow that it would work in the administrative realm because the criminal law involving new prosecutions of folks is a more intrusive aspect. Yes, and this, for instance, to conclude, is not an atypical deprivation of rights, which would justify the implication of, in most instances, prison misconduct is not an atypical deprivation of rights that would even justify the extension of the procedural due process clause. So we're talking about a much less severe restraint on liberty than we are in the sense of a criminal case. But the issue then becomes, if I may conclude just briefly in line with Judge Ambrose's insights into this matter, the issue then becomes whether or not Watson's account of what he thought was not much wrong with his radio, but nevertheless something wrong with his radio that wasn't the way it was when you buy it new, if his account of what was not much wrong with his radio constituted an alteration, and I say it should because we should err on the side of over-enforcement, then we have enough to excuse all the imponderables, which Judge Ambrose so clearly pointed out. Attorney General, thank you very much. Thank you. Thank you for your time. Thank you. Ms. Mossman, do you have some time? Your Honor, I would submit that Rausser does leave room for this Court to consider the retaliatory motive because it asks for the same decision defense whether the prison official would have made the same decision for reasons reasonably related to legitimate penological interests, and clearly retaliation is not a reason legitimately related to penological interests. So there's some room to consider discriminatory retaliatory motive in the Rausser decision itself. And here we're not saying that Mr. Watson should or even will win, just that he needs a chance to flesh out these genuine issues of material fact. He was pro se before the District Court. He had somewhat limited discovery ability, and he was still able to marshal these genuine issues of material fact that are giving everyone pause here. And summary judgment quite simply shouldn't have been granted on this case. It was done too hastily and without sufficient analysis into whether he was clearly guilty of the prison misconduct here. Simply saying broken, it is against the tenet of Rule 56 that the evidence is to be taken in the light most favorable to the non-moving party. Broken, you know, it's semantics, but it's different than loose and wiggly, and it shows that summary judgment was improperly granted here. Okay, Ms. Postman, thank you very much. Thank you. I also want to thank the firm for taking on the pro bono assignments. We really appreciate that. We couldn't really function to the extent that we were able to function if we didn't have folks like yourselves wanting to take on these assignments, so thank you very much. Well, thank you for the opportunity. Thank you.